UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES RYDER, | Case No. 08-12115 |
| Plaintiff, | Lawrence P. Zatkoff |
| vs. | United States District Judge |
| HUGH WOLFENBARGER, *et al.*, | Michael Hluchaniuk |
| Defendants. | United States Magistrate Judge |

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 16, 32)**

**I.   PROCEDURAL HISTORY**

Plaintiff filed this prisoner civil rights complaint on May 14, 2008. (Dkt. 1). On October 8, 2008, defendants Wolfenbarger and Stevens filed a motion for summary judgment based on their assertion that plaintiff failed to exhaust his administrative remedies. (Dkt. 16). Plaintiff filed a response on November 26, 2008. (Dkt. 18). Defendants filed a reply on December 3, 2008 and plaintiff filed a sur-reply on December 15, 2008. (Dkt. 19, 20). On August 12, 2009, District Judge Lawrence P. Zatkoff referred this matter to the undersigned for all pretrial proceedings. (Dkt. 22). On November 10, 2009, the other remaining defendants filed a motion for summary judgment, also based on exhaustion. (Dkt. 32). Plaintiff filed a response on December 9, 2009. (Dkt. 34). Defendants filed a

reply on December 11, 2009. (Dkt. 35). These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

## II. STATEMENT OF FACTS

### A. Plaintiff's Complaint

Plaintiff's claims for deliberate indifference to a serious medical need arise from events that occurred on August 11, 2007, when he suffered a heart attack and subsequently had triple heart bypass surgery. (Dkt. 1). Plaintiff complains that, before his heart attack, it was well-known that he was a cardiovascular patient and that he had complained about not receiving regular care for his heart condition. He also says that he complained of chest pains before his heart attack, but was never taken to health care for any treatment. (Dkt. 1).

### B. Grievance Procedure

At the time plaintiff filed his grievance, MDOC Policy Directive 03.02.130, effective, July 9, 2007, was the applicable grievance procedure.[1] The MDOC grievance procedure explains that "[g]rievances may be submitted regarding

---

[1] Defendants attached an earlier version of the MDOC grievance procedure to their motions for summary judgment.

alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." *See Velez v. Michigan Dep't of Corrections*, 2010 WL 1254857, *2 (E.D. Mich. 2010) (Case No 09-10519, Dkt. 21-6). The grievance procedure also requires that the information provided "is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly. *Id*.

Within five business days of attempting to resolve a dispute with staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator designated for the facility. *Id*. at *3. And, if the merits of the grievance are addressed, the grievant must be interviewed in order to "explain the grievance more completely" and to enable the respondent to "gather any additional information needed to respond to the grievance." *Id*. If the grievant is not interviewed, the reason must be included in the written response to the grievance. *Id*. In response to the Step I grievance, the respondent must identify all policies, rules, or procedures that are related to the issue or conduct grieved. *Id*. At Step I, the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance accepted," that the response was reviewed by

the appropriate supervisor, and that a copy of the response is provided to the grievant by the due date. *Id.*

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II. *Id.* If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent. *Id.* The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. *Id.* For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id.* The Grievance Coordinator must then ensure that "any additional investigation was completed as necessary for each Step II grievance accepted...." *Id.*

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Grievance and Appeals Section. *Id.* A Step III appeal must be sent to the Grievance and Appeals Section within 10 business days after the prisoner receives the Step II response, or within 10 business days after the response was due. *Id.* If a Step III grievance involves medical care or treatment, the Grievance and Appeals Section must forward any such grievance to the Bureau of Health Care Services (BHCS), which must ensure that the grievance is investigated and a timely response provided. *Id.* The Manager of the Grievance and Appeals

Section must ensure that any additional investigation is completed as necessary for Step III. *Id.*

## III. ANALYSIS AND CONCLUSIONS

### A. Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative

defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986), quoting, W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561, quoting, 11 Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of

fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary

judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

    B.    <u>Exhaustion of Administrative Remedies</u>

        1.    Legal standards

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id.* Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party

8

Report and Recommendation
Motions for Summary Judgment
*Ryder v. Wolfenbarger*; Case No. 08-12115

has the burden-the plaintiff on a claim for relief of the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

2. Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002)

9

Report and Recommendation
Motions for Summary Judgment
*Ryder v. Wolfenbarger*; Case No. 08-12115

(alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

3.     Defendants have satisfied their burden of proof.

Defendants present the affidavit of James Armstrong, the Manager for the Grievance Section of the MDOC. (Dkt. 16-4; 32-4). He explains that when a Step III grievance is received by the Grievance Section, it is date-stamped by the clerical staff. The technician then audits the grievance to ensure completion and enters the information, including the grievance code as assigned by the local grievance coordinator, into the grievance tracking database. After such information is entered, the grievance is given to a grievance responder on Mr. Armstrong's staff. The grievance responder researches the information and facts regarding the grievance, including contacting the appropriate facilities, individuals, and others sources to formulate an appropriate responses. Then, the responder prepares a recommendation for an answer to the grievance. Mr. Armstrong then reviews the recommendation and either makes changes or approves it as written. Once the recommendation is made and approved, the grievance is returned to clerical staff for issuance of a return date and final data entry in the grievance tracking database. Copies of the grievance package are made and distributed to the appropriate warden and grievant. (Dkt. 16-4; 32-4).

Searching the records for a Step III grievance involves running a query on the grievance database and comparing what is contained in the paper files with the data screen from the database. (Dkt. 16-4; 32-4). Every Step III grievance appeal

is recorded on the Grievance Tracking database. Mr. Armstrong attached a copy of the Step III grievance database inquiry results for plaintiff, which shows that plaintiff did not file a Step III grievance relating to the issues in this case. (Dkt. 16-4; 32-4).

In his response to the second motion for summary judgment, plaintiff submits an affidavit stating that he filed a Step III appeal and never received any response. (Dkt. 34, p. 16). In his first response, plaintiff says that he sent his Step III appeal to "J. Vansickle" and received no response. (Dkt. 18, p. 2). With his response to the first motion for summary judgment, plaintiff filed a copy of his Step III grievance appeal. (Dkt. 18, p. 16). Notably, plaintiff's copy of this document and defendant's copy of this document differ in several respects. Plaintiff's copy, of course, contains the reasons for his Step III appeal. (Dkt. 18, p. 16). Defendants' copy contains no such information. (Dkt. 16-3, p. 4). More troubling, however, are the other alterations that appear on plaintiff's copy. It appears that all of the other portions of the form have been traced and darkened. In addition, in the Step II response section, it appears that the words "Note that it took over 3 month's for Respondent to answer step II; clearly an untimely response" appear on plaintiff's copy, but not on defendants' copy." (Dkt. 18, p. 16). Most significantly, the form contains instructions to the grievant should a Step III appeal be filed: "If you should decide to appeal the response you receive at Step II, you

12

Report and Recommendation
Motions for Summary Judgment
*Ryder v. Wolfenbarger*; Case No. 08-12115

should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909." (Dkt. 18, p. 16). Noticeably absent from plaintiff's affidavit and other filings is any assertion that he mailed the Step III appeal to the appropriate address listed on the form. Rather, his affidavit only says he "filed it." In his responses, however, plaintiff admits that he sent it to "J. Vansickle," who according to plaintiff, is the grievance coordinator at MRF, with whom he also filed the Step II appeal. (Dkt. 18, p. 2). In his sur-reply, plaintiff again admits that "J. Vansickle" "received all three of my grievances; and failed to log them in the computerized grievance tracking system." (Dkt. 20, p. 1).

In the view of the undersigned, defendant has satisfied its burden of proving that plaintiff did not exhaust his administrative remedies. Plaintiff has failed to create any genuine issue of material fact because, despite his affidavit stating that he "filed" the Step III response, he repeatedly admits that he did not follow the grievance procedure requirements for submitting a Step III grievance appeal. Under *Woodford*, plaintiff cannot simply choose to send his Step III appeal to the grievance coordinator at the facility where he is housed. Rather, a plaintiff must follow the process outlined in the grievance procedure and as indicated on the grievance form. The undersigned notes that plaintiff correctly points out that defendants have essentially established that no Step III appeal was received, which does not mean that none was *sent*. However, in light of plaintiff's admissions that

he did not follow the appropriate procedure for filing the Step III grievance appeal, there is no other conclusion to reach except that plaintiff failed to exhaust his administrative remedies. Had plaintiff been able to offer evidence that he complied with the Step III grievance appeal procedure, or reasonably attempted to do so, the outcome might have been different.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 23, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on June 23, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Michael R. Dean, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Charles Ryder, 606317, CHIPPEWA CORRECTIONAL FACILITY, 4269 West M-80, Kincheloe, MI 49784.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov